**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Bobby Ray Curry, Jr., | Civ. No. 08-134 (JRT/JJK) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Dwight Fondren, Warden, | |
| Respondent. | |

Katherine Menendez, Esq., Assistant Federal Defender, counsel for Petitioner.

Michael A. Dees, Assistant United States Attorney, counsel for Respondent.

JEFFREY J. KEYES, United States Magistrate Judge

## INTRODUCTION

This matter is before this Court on Petitioner Bobby Ray Curry, Jr.'s, Petition for a Writ of Habeas Corpus Pursuant to 28 USC 2241 by a Person in Federal Custody (the "Petition") (Doc. No. 1). Through the Petition, Petitioner challenges the denial of the return of forfeited good conduct time. The matter has been referred to this Court for a Report and Recommendation. *See* 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, this Court recommends that the Petition be denied and this action be dismissed with prejudice.

## BACKGROUND

**A.     Petitioner's Incarceration and Good-Conduct-Time History**

Petitioner is a military prisoner currently serving his sentence in the Federal Correctional Institution in Sandstone, Minnesota.  (Doc. No. 9, Decl. of Angela Buege ("Buege Decl.") ¶ 3.)  In March 1994, he was convicted by a general court martial of attempted murder, assault consummated by a battery, attempted kidnapping, and burglary with intent to commit murder.  (Doc. No. 25, Ex. 2, Resp't's Index of Attach. and Pet'r's Administrative and Procedural History ("Resp't's Index") Attach. 1 at 1-2.)  The kidnapping charge was later dismissed and Petitioner's sentence was reduced from 35 to 30 years.  (*Id.* at 6.)

Petitioner began serving his sentence in the custody of the Department of the Army at the United States Disciplinary Barracks ("USDB") in Fort Leavenworth, Kansas.  (*Id.* at 8.)  During his incarceration there, Petitioner violated institutional rules on three occasions.  (*Id.*, Attach. 2 at 1.)  These infractions, which included "indecent exposure[,] assault consummated by battery[, and] disrespect[,]" resulted in some of Petitioner's good-conduct time ("GCT") being forfeited.  (*Id.*)  As a result, Petitioner lost a total of 330 days of GCT for the rules violations he committed while confined at the USDB facility.  (*Id.*)

On September 14, 1998, the Department of the Army transferred Petitioner

to the custody of the Bureau of Prisons (the "Bureau") for confinement at a location to be chosen at the discretion of the Bureau.[1]  (Resp't's Index, Attach. 4 at 1.)

There is no dispute that following his transfer to the Bureau's custody Petitioner behaved as a model prisoner during the period of September 1998 through September 2001.  On several occasions, wardens of the facilities where Petitioner has been confined have recommended to the Department of the Army that portions of Petitioner's 330 days of forfeited GCT be restored because of Petitioner's good behavior.  A brief history of such recommendations follows.

At some point prior to September 2000, Petitioner began serving his sentence at the McKean Federal Correction Institution in Bradford, Pennsylvania ("FCI-McKean").  In September 2000, the FCI-McKean Warden, Bernie Ellis, recommended that 30 days of Petitioner's forfeited GCT be restored.  (Resp't's Index, Attach. 5 at 2.)  In November 2000, the Commandant of the USDB approved Warden Ellis's request, and 30 days of Petitioner's forfeited GCT was subsequently restored.  (*Id.* at 1.)

In April 2001, Warden Ellis again recommended restoration of Petitioner's forfeited GCT, this time requesting the Department of the Army restore 150 days.

---

[1]  The authority to transfer a prisoner from the custody of the Department of the Army to the Bureau is provided by statute and implemented by an agreement
(Footnote Continued on Following Page)

(*Id.*, Attach. 6 at 2.)  Warden Ellis recommended leaving the remaining 150 days "on the shelf" to encourage Petitioner's continued good behavior.  (*Id.*)  The USDB Commandant again approved Warden Ellis's request.  (*Id.* at 1.)

On September 26, 2001, the new FCI-McKean Warden, John LaManna, approved the restoration of an additional 180 days of Petitioner's forfeited GCT, which would have completely restored the remainder of the 330 days Petitioner originally forfeited.[2]  (Resp't's Index, Attach. 7 at 2.)  However, on October 1, 2001 (Resp't's Index 2), the Commandant authorized restoration of only 14 days of Petitioner's forfeited GCT.  (Resp't's Index, Attach. 7 at 1.)  The Commandant's responses to Petitioner's subsequent requests for restoration of his remaining forfeited GCT show that the reasoning for the Commandant's approving only 14 days restoration was because of the nature of Petitioner's rules violations while at the USDB.  (*See id.*, Attach. 11 at 2; Attach. 12 at 2.)  Petitioner now challenges the Commandant's refusal to restore all of his remaining forfeited GCT.

**B.     Military Prisoners in Bureau Custody and Their Good-Conduct Time**

---

(Footnote Continued from Previous Page)
between the Army and the Bureau.  *See* discussion *infra* pp. 4-7.

[2]     Although LaManna recommended restoration of 180 days of Petitioner's forfeited GCT, after the initial restoration of 30 days in November 2000, and the restoration of 150 days in April 2001, Petitioner only had 150 days remaining
(Footnote Continued on Following Page)

Before turning to the issues presented by the Petition, some discussion of the regulatory framework and background relevant to Petitioner's challenge is helpful. The Uniform Code of Military Justice provides that military prisoners may be transferred to the custody of the Bureau as follows:

> Under such instructions as the Secretary [of Defense] may prescribe, a sentence of confinement adjudged by a court martial or other military tribunal . . . may be carried into execution by confinement in any place of confinement under the control of any of the armed forces or in any penal or correctional institution under the control of the United States[.]

10 U.S.C. § 858(a). According to this statute, a military prisoner may be confined in a federal civilian correctional institution. *See id.*; *see also Bates v. Wilkinson*, 267 F.2d 779, 780 (5th Cir. 1959) ("It has long been established that military prisoners may properly be confined in federal institutions[.]").

Pursuant to this authority, in May 1994, the Department of the Army and the Bureau entered into an agreement "establish[ing] the policies and procedures governing the transfer of military prisoners in custody of [the] Department of the Army . . . and the Federal Bureau of Prisons." (Resp't's Index, Attach. 18 at 1.) This agreement provides that the Department of the Army will submit a copy of the military prisoner's "sentence computation records, photographs, fingerprints, and court-martial orders" to the Bureau upon the transfer of custody. (*Id.* at 3.) It

---

(Footnote Continued from Previous Page)
from the 330 days he originally forfeited.

further provides that "[Department of the Army] accountability for all military prisoners in custody of the [Bureau] pursuant to this agreement rests with the Commandant, [USDB], Forth Leavenworth, KS."  (*Id.*)

The agreement further provides that "[w]hile in [the Bureau's] custody, military prisoners remain subject to all [Bureau] administrative and institutional policies and procedures."  (*Id.*)  The Bureau implemented a regulation concerning the administration of sentences of military prisoners confined in the Bureau's institutions.  Specifically, concerning such prisoners' sentence computations, this regulation provides that:

> All military and Coast Guard sentence computations will be provided by the records office, [USDB], Forth Leavenworth, Kansas.
>
> - The Bureau must accept the sentence computation as provided by the military authorities.
>
> - The Bureau will refer suspected errors, or challenges to the sentence computation by the inmate, to the Records Office, [USDB], Fort Leavenworth, Kansas, for resolution.
>
>   a.  A Discipline Hearing Officer may recommend the forfeiture, disallowance, or restoration of Military Good Time (MGT).
>
>   - *The Bureau must forward recommendations concerning [MGT] to military authorities for their action* when reports are generated for clemency reviews.
>
>   - If any action occurs as a result of the MGT recommendation, military authorities will recompute the sentence and provide a copy to the institution.

> Unit/case management staff are to forward a recommendation for forfeiture, disallowance, or restoration of MGT received after the last clemency review, to the appropriate military or Coast Guard Authority.

United States Department of Justice, Federal Bureau of Prisons, Program Statement 5110.14, Administration of Sentence for Military and Coast Guard Inmates ("Program Statement 5110.14") ¶ 9 (Jan. 7, 2000) (emphasis added); (Resp't's Index, Attach. 19 at 2-3).

Pursuant to the recommendation-and-approval process contemplated by Program Statement 5110.14, as discussed above, the Bureau recommended restoration of Petitioner's GCT in September 2000 (Resp't's Index, Attach. 5 at 2), which was approved by the Commandant in November 2000. (*Id.* at 1.) The same process was in effect when the Bureau recommended restoration of Petitioner's GCT in April 2001 (*Id.*, Attach. 6 at 2), which the Commandant approved in May 2001. (*Id.* at 1.) Warden LaManna used the same form as his predecessor when he took action on Petitioner's forfeited GCT on September 26, 2001 (*Id.*, Attach. 7 at 2), and the Commandant treated Warden LaManna's action as a recommendation, approving only 14 of the 180 days LaManna requested be restored on October 1, 2001. (*Id.* at 1.)

One day after Warden LaManna's action on Petitioner's GCT, Colonel Manolito Garabato, Chief, Security, Force Protection, and Law Enforcement Division, addressed forfeited GCT restoration for military prisoners in Bureau

7

custody in an internal Army memorandum. This September 27, 2001 memorandum stated that: "For the purpose of restoring forfeited abatements (Good Time Credit), wardens of Federal Bureau of Prisons facilities, housing prisoners transferred by the U.S. Department of the Army, have the authority and discretion to restore forfeited abatements." (Doc. No. 10, Pet'r's Resp. 1-2, Ex. 3 ¶ 2; Resp't's Index, Attach. 23 ¶ 2.) On November 7, 2001, an Inmate Personnel Officer of the USDB at Fort Leavenworth, Kansas, sent the Garabato memorandum to Bureau wardens and informed them that: "This Memorandum provides authority for Wardens of Federal Bureau of Prisons facilities, housing prisoners transferred by the U.S. department of the Army, to restore forfeited abatements." (Pet'r's Resp. 2, Ex. 4 ¶ 1; Resp't's Index, Attach 25 at 1.)

On March 18, 2002, Colonel Garabato wrote another internal memorandum concerning the authority to restore the forfeited GCT of military prisoners in Bureau custody and responding to the USDB Commandant's request that the Commandant be permitted "to restore forfeited abatements, regardless of where forfeited, to those prisoners who have been transferred to the Federal Bureau of Prisons and are under the administrative control of the USDB [because t]he current regulation is silent as to that authority." (Resp't's Index, Attach. 27 at 1-2.) In this memorandum, Garabato states: "Additionally, your request to allow the Commandant of the U.S.D.B. to restore forfeited

8

abatements, regardless of where forfeited, of inmates who have been transferred to the Federal Bureau of Prisons and are under the administrative control of the U.S.D.B. is approved." (*Id.* at 2.)

## DISCUSSION

"Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). However, "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A habeas corpus petition is the appropriate vehicle for challenging a refusal to restore GCT where such restoration would shorten the prisoner's sentence. *See Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973) (concluding that "even if restoration of respondents' good-time credits had merely shortened the length of the their confinement . . . their suits would still have been within the core of habeas corpus in attacking the very duration of their physical confinement itself").

Petitioner argues that Colonel Garabato's September 27, 2001 memorandum ceded the military's authority over restoration of military prisoners' forfeited GCT to the wardens at the Bureau facilities to which military prisoners were transferred. Because the Commandant lacked authority to act after this memorandum, Petitioner argues, the Commandant's subsequent restoration of

9

only 14 days of Petitioner's remaining forfeited GCT had no effect. Thus, Petitioner contends that Warden LaManna's restoration of his remaining forfeited GCT on September 26, 2001, should be controlling and his sentence should be recalculated accordingly. Petitioner further argues that Colonel Garabato's March 2002 memorandum shows that the Commandant lacked the authority to act regarding Petitioner's GCT after September 27, 2001. If the Commandant retained authority over Petitioner's GCT at that time, Petitioner asserts, there would have been no need for the March 2002 memorandum to return the Commandant's authority.

This Court rejects Petitioner's argument because the Department of the Army lacked the authority to unilaterally decree that the Bureau's wardens would make the ultimate decision regarding military prisoners' GCT. It is well-settled that an administrative agency's power to act extends only so far as the authority granted to it by Congress. *See State Highway Comm'n of Mo. v. Volpe*, 479 F.2d 1099, 1107 (8th Cir. 1973) ("'When Congress passes an Act empowering administrative agencies to carry on governmental activities, the power of those agencies is circumscribed by the authority granted.'" (quoting *Stark v. Wickard*, 321 U.S. 288, 309-10 (1944))). No provision before this Court gives the Department of the Army the authority to enlarge or diminish the powers vested in the Bureau of Prisons. It is the Department of Justice's prerogative to determine

in the first instance, by its own regulations, the scope of its powers, and thus the powers of the Bureau.

The relevant Bureau regulation here, Program Statement 5110.14, specifically provides that "[t]he Bureau must accept the sentence computation [for military prisoners in Bureau custody] as provided by military authorities" and the Bureau's actions regarding the military prisoners' GCT are to be made by "recommendations" to the appropriate military authorities.  Program Statement 5110.14, ¶ 9.  There is no indication that Warden LaManna was exercising anything other than his authority to "recommend . . . restoration of [Petitioner's forfeited GCT] to the appropriate military . . . [a]uthority[,]" *see id.*, when he signed Bureau Form BP-S389.058 on September 26, 2001.  (Resp't's Index, Attach 7 at 2.)  This was the same form that the previous warden of FCI-McKean used to recommend restoration of Petitioner's GCT to the Commandant. (Resp't's Index, Attachs. 5-6.)  The Commandant also appears to have understood Warden LaManna's September 26, 2001 action to be nothing more than a recommendation regarding Petitioner's GCT.  (*Id.*, Attach. 7 at 1 (addressing a "[p]ositive recommendation from Warden" and approving restoration of fewer days than recommended); *see also id.*, Attach. 11 at 2 (disapproving a "[p]ositive recommendation from [the] Warden" because of "the nature of the offense for which the time was taken").)

Petitioner urges a different reading of Program Statement 5110.14. Petitioner asserts that the "Program Statement, by its own text, permits the Wardens through the Disciplinary Hearing Officers . . . to take action upon military sentences." (Doc. No. 30 at 5.) Petitioner's reading ignores the plain language of the regulation; the regulation indicates that the ultimate authority over military prisoners' sentence calculations rests with the military authorities and that actions regarding such prisoners' GCT taken by the Bureau are to be made by recommendations to the appropriate military authorities.

For these reasons, this Court concludes that Petitioner is not "in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241(c)(3). Therefore, this Court recommends that the Petition be dismissed with prejudice.

## RECOMMENDATON

Based on the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28 USC 2241 by a Person in Federal Custody (Doc. No. 1), be **DENIED**; and

2. This action be **DISMISSED WITH PREJUDICE**.

Date: April 8, 2009

                                           *s/ Jeffrey J. Keyes*
                                           JEFFREY J. KEYES
                                           United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **April 29, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.