# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| BOBBY RAY CURRY, JR., | Civil No. 08-134 (JRT/JJK) |
| Petitioner, | |
| v. | **ORDER ADOPTING REPORT AND RECOMMENDATION** |
| DWIGHT FONDREN, Warden, | |
| Respondent. | |

Katherine Menendez, Assistant Public Defender, **OFFICE OF THE FEDERAL DEFENDER**, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415, for petitioner.

Michael A. Dees, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for respondent.

Petitioner Bobby Ray Curry, Jr. objects to a Report and Recommendation issued by United States Magistrate Judge Jeffrey J. Keyes on April 8, 2009. After a *de novo* review of those objections, the Court adopts the Report and Recommendation for the reasons stated below.

## BACKGROUND

Curry is a military prisoner who is currently serving his sentence at the Federal Correctional Institute in Sandstone ("FCI-Sandstone"). (Buege Decl., Docket No. 9, ¶ 3.) On December 10, 1993, Curry was sentenced to a thirty-five year term of imprisonment following court martial convictions for attempted murder, assault and battery, attempted

kidnapping, and burglary.  (*Id*., ¶ 4.)  After the kidnapping charge was subsequently set aside, Curry's sentence was reduced to thirty years.  (*Id*.)

Curry began serving his sentence in the custody of the Department of the Army at the United States Disciplinary Barracks ("USDB") in Fort Leavenworth, Kansas.  As a result of three infractions – involving indecent exposure, assault and battery, and disrespect – Curry forfeited a total of 330 days of military good-conduct time ("MGT").  (*See* Buege Decl., Docket No. 9, ¶ 7.)  On September 14, 1998, the Army transferred Curry to the custody of the Bureau of Prisons ("BOP").  *See* 10 U.S.C. § 858(a) (authorizing such transfers).

On January 7, 2000, the BOP promulgated Program Statement 5110.14, which addresses the administration of the sentences of military prisoners held in BOP prisons.  (*See* Buege Decl., Docket No. 9, Ex. E.)  The regulation states that BOP "must accept the sentence computation as provided by military authorities."  (*Id*., at 2.)  In addition, the regulation indicates that while BOP officials may "recommend" the restoration of MGT, they "must forward **recommendations** concerning [MGT] to military authorities **for their action**."  (*Id*., at 3 (emphasis added).)

In accordance with this Program Statement, in September 2000, the Warden at the McKean Federal Correctional Institution in Bradford, Pennsylvania ("FCI-McKean") recommended that the USDB Commandant restore 30 days of Curry's forfeited MGT.  In November 2000, the Commandant approved the Warden's request.  In April 2001, the Warden at FCI-McKean recommended that an additional 150 days of Curry's MGT be restored.  The Commandant approved this request as well.

On September 26, 2001, a new Warden at FCI-McKean recommended that the Commandant restore an additional 180 days of Curry's remaining forfeited MGT.[1] On October 1, 2001, however, the Commandant indicated that he would only authorize the restoration of 14 days.[2] Subsequent correspondence indicates that the Commandant believed that it was inappropriate to restore the remaining MGT in light of the nature of Curry's infractions at the USDB. (*See* Docket No. 12, Ex. 6.) BOP followed the direction of the Commandant, and merely restored 14 days.

On September 27, 2001 – a day after the Warden's recommendation but several days before the Commandant's response – the Department of the Army circulated an internal memo stating that BOP wardens would now have the authority to restore forfeited MGT. On November 7, 2001, this memo was distributed to BOP wardens. On March 18, 2002, the Army issued another internal memo in response to an inquiry from the USDB Commandant, apparently restoring military authority over the MGT of military prisoners in BOP custody. (*See* Docket No. 12, Ex. 1.)

On January 11, 2008, Curry filed this petition for habeas corpus under 28 U.S.C. § 2241, contending that he is entitled to have the BOP's September 26, 2001, recommendation enforced, because the Army had abdicated any authority to review it. On April 8, 2009, the Magistrate Judge filed a Report and Recommendation

---

[1] As the Magistrate Judge notes, after the restoration of 30 days in November 2000 and 150 days in April 2001, it would appear that there were only 150 days left to restore. In any event, regardless of the specific number of days at issue, Curry's petition fails for the reasons set forth below.

[2] While this date is contested by Curry, the precise timing of this decision has no impact on the Court's reasons for dismissing Curry's petition.

recommending that this petition be dismissed. Curry now objects to that recommendation.

## ANALYSIS

A habeas corpus petition is the appropriate vehicle for a prisoner to challenge a refusal to restore good conduct time. *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973). To obtain habeas relief, however, a petition must demonstrate a "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

Here, Curry argues that at the time when the Commandant rejected the September 26, 2001, recommendation of the FCI-McKean Warden, he no longer had any authority over MGT determinations. Thus, Curry argues that the BOP's recommendation to restore an additional 180 days of MGT should be enforced.

The Magistrate Judge disagreed, concluding that the BOP had established its own procedures for dealing with MGT in Program Statement 5110.14, and that the Army had no authority to unilaterally enhance the BOP's responsibilities. Accordingly, the Magistrate Judge recommended that Curry's petition be dismissed. Curry now objects to that recommendation, again arguing, *inter alia*, that regardless of what is contemplated in Program Statement 5110.14, at the time of the Commandant's critical October 1, 2001, decision, the Army had plainly abandoned any authority to review the BOP's MGT determinations. Thus, Curry argues, the BOP's September 26, 2001, recommendation should be given full effect.

While this matter clearly has been made more complicated by the Army's apparent shifting in its approach to MGT time – and the Court can certainly understand how that shifting would be frustrating for prisoners seeking to understand particular MGT decisions – this Court agrees with the Magistrate Judge that there is simply no legal basis for the Court to provide relief. In short, even if Curry is correct in his claim that the Army intended to withdraw from its role in MGT determinations before the Commandant's October reversal, Curry can only obtain habeas relief if he can identify a "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Court fails to find anything in Curry's filings that identifies such a violation.

In short, it appears that the most that Curry can show is that the Army and the BOP did not divide their responsibilities over MGT determinations in a manner that was consistent with the Army's intent.[3] But Curry does not argue that any particular distribution of those responsibilities was required by a federal statute, federal regulation, or by the federal constitution. Nor does Curry contend that he has an enforceable federal right to have an MGT determination made in accordance with internal Army policy or mere memoranda exchanged between federal agencies.[4] Rather, Curry approaches this petition as if the only question is who the Army and the BOP agreed would be the final

---

[3] The Court notes that even if it was in fact the Army's intent to abdicate any role in MGT decisions, this was clearly at odds with the written understanding of the BOP. As noted above, Program Statement 5110.14 unambiguously calls for the BOP to forward "recommendations" to military authorities "for their action." (Buege Decl., Docket No. 9, at 3.)

[4] To be clear, Curry has not argued that the Army abdicated its role in MGT determinations in a formally promulgated federal regulation.

authority, without any explanation of how their understanding could convey a federal legal right. In the absence of such an explanation – or of any other apparent legal basis for Curry's petition[5] – this Court simply lacks authority to grant Curry relief. Accordingly, the Court overrules Curry's objections and adopts the Report and Recommendation of the Magistrate Judge.

**ORDER**

Based on the foregoing, all the files, records, and proceedings herein, the Court **OVERRULES** petitioner's objections [Docket No. 34] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated April 8, 2009 [Docket No. 31]. Accordingly, **IT IS HEREBY ORDERED** that the petition for habeas corpus [Docket No. 1] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 29, 2009  
at Minneapolis, Minnesota.

                                                    s/ John R. Tunheim  
                                                    JOHN R. TUNHEIM  
                                                United States District Judge

---

[5] The Court notes that Curry does have a constitutionally protected liberty interest in his good time credits. *See Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). Thus, before those credits could be initially revoked, he was entitled to "the minimum requirements of procedural due process appropriate for the circumstances." *Id*. This included "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). Curry does not argue that he was deprived of any of these protections when his good time credits were originally revoked, or that he was entitled to similar protections in the context of a decision about whether to restore those credits. Instead, as noted above, he merely contends that final authority should have rested with a different decision-maker, without any explanation for why this was required under federal law.